## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Clint E. Cothern and Joan L. Cothern,**
**Defendants Below, Petitioners**

**FILED**

August 28, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-1056** (Summers County 10-C-14)

**Curtis R. Jones,**
**Plaintiff Below, Respondent**

### MEMORANDUM DECISION

Petitioners Clint E. Cothern and Joan L. Cothern, by counsel John H. Bryan, appeal the August 29, 2014, order of the Circuit Court of Summers County rendering a verdict in favor of respondent and rescinding the deed at issue following a bench trial.[1] Respondent Curtis R. Jones, by counsel E. Kent Hellems, filed a response brief and asserted a cross-assignment of error requesting damages.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure. However, as fully explained herein, the circuit court erred in failing to address the issues raised in respondent's cross-assignment of error. Therefore, we remand this matter to the Circuit Court of Summers County for proceedings consistent with this memorandum decision.

### Facts and Procedural History

Petitioner Clint E. Cothern saw a real estate advertisement for a tract of land in Jumping Branch, West Virginia in a local newspaper, which was listed for sale by real estate broker Howard Vest. Petitioner contacted the real estate company and viewed the property with Mike Cales, an employee of that company. Mr. Cales pointed out what he believed were the borders of the property, indicating that he was 90% sure that he showed petitioner the correct borders. Mr. Cales also provided petitioner a topographical map representing the same borders of the property that he showed petitioner. On October 27, 2005, Mr. and Mrs. Cothern purchased the property from Naomi Crawford for $35,000. Shortly thereafter, petitioners executed a timber contract

---

[1] We note that petitioners' counsel reported to this Court that Petitioner Joan L. Cothern passed away during the pendency of the circuit court action.

[2] Petitioners did not submit a reply or a response to respondent's cross-assignment of error.

1

with Mullican Lumber Company ("Mullican") to sell the timber on the land. In that contract, petitioners warrantied that they owned the land being timbered and agreed to defend the company from any claims regarding property boundaries or ownership disputes. After entering into that contract, petitioners engaged in discussions with respondent to sell the property to him. At that time, respondent owned a tract of land adjacent to petitioners' land in Greenville, West Virginia. Petitioners and respondent worked out a deal wherein respondent sold petitioners his land in Greenville and petitioners sold respondent the land in Jumping Branch.

On October 12, 2007, petitioners executed a deed conveying the property in Jumping Branch to respondent for $27,600. Respondent was aware that the property was subject to the timber contract with Mullican. Thereafter, Mullican began timbering the property. During those operations, J.A. Maxwell contested Mullican's right to timber the land, arguing that the land being timbered was his.[3] Mullican alerted petitioners of the situation and halted timbering operations. Petitioners contacted a survey company to survey the property.[4] The survey company issued its report, finding that the description of the property changed in 1976 from "[b]eginning at the lime stone cliff . . ." ("the limestone cliff description") to "[b]eginning on the south side of the Little Bluestone . . ." ("the little bluestone description"). From 1981 through the present, petitioners' chain of title contained only the little bluestone description. The survey company found that that the land described in the little bluestone description was not physically located in the area that Mr. Cothern visited and walked with Mr. Cales and was not the area represented on the topographical map. The company also determined that the little bluestone description described two separate pieces of land and that other individuals possessed superior title to both of those pieces of land. Finally, the company found that the limestone cliff description described a piece of land located in the area that Mr. Cothern thought he had purchased, but it did not include the entire area and was only 8.38 acres.[5] The remaining area included in that description, including that being timbered, was owned by Mr. Maxwell. Following the issuance of that report, Mullican permanently halted timbering operations. Petitioners then reached settlements with Mullican and Mr. Maxwell.

The circuit court found in its "Order – Rendering Verdict Pursuant to Bench Trial" that during that time, respondent was not made aware of the issues surrounding the title to the property. When respondent noticed that timbering operations had stopped, he began calling Mullican. A Mullican employee informed respondent that according to a survey, respondent did not possess title to the land being timbered. Respondent visited petitioners who revealed the contents of the survey, including the information that respondent did not own the land described in the metes and bounds description of the deed. Respondent filed the subject action alleging that petitioners breached the covenant of general warranty contained in the most recent deed. As part

---

[3] The record contains very little information about Mr. Maxwell, but it appears that he owns a portion of the property at issue.

[4] Petitioners had a title search performed prior to closing on the property, but this was the first survey any of the parties to this action requested.

[5] The parties originally believed that petitioners conveyed approximately twenty-five acres to respondent.

of that claim, respondent argued that petitioners failed to convey marketable title to the land respondent thought he was purchasing and that petitioners failed to defend respondent's title to the property when they settled with Mr. Maxwell and Mullican.

Following a bench trial, the circuit court entered its order, finding that respondent does not possess superior title to the land described in the little bluestone description. However, petitioners contended that the little bluestone description should be disregarded, asking that the circuit court find that the land described in the limestone cliff description in the 1976 deed was conveyed to respondent. As such, petitioners claim that respondent was conveyed 8.38 acres of land and that there was no breach of warranty since land was conveyed, only less land than was described. Petitioners argued below that no one has challenged respondent's title to the 8.38 acres and that respondent had not been ousted from that property.

The circuit court specifically found that the deed between the parties to this action is unambiguous, as it explicitly states that it is the parties' intent to convey the little bluestone description and contains no reference to the limestone cliff description. However, the court also found that the undisputed evidence adduced at trial showed that the little bluestone description was not what the parties intended to convey. "Because it is clear that the language of the deed does not describe the area of land that the parties thought was being conveyed, the [circuit court found] the inclusion of the little bluestone description to be a mutual mistake of material fact." The court noted that the parties essentially argued that the deed should be reformed, but the court found that the deed should be rescinded. In doing so, the circuit court found that respondent was entitled to the amount he paid for the land - $27,600. The court also ordered that the deed be removed from the records of the County Clerk of Summers County. Because the circuit court rescinded the deed, it found that it did not need to reach the issue of the breach of the covenant of warranty.

**Discussion**

"'In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.' Syllabus Point 1, *Public Citizen, Inc. v. First Nat. Bank in Fairmont,* 198 W.Va. 329, 480 S.E.2d 538 (1996)." Syl. Pt. 1, *State v. Mechling,* 219 W.Va. 366, 633 S.E.2d 311 (2006).

Syl. Pt. 1, *State v. Knotts*, 233 W.Va. 665, 760 S.E.2d 479 (2014).

On appeal, petitioners assert two assignments of error and respondent asserts a single cross-assignment of error. Petitioners first argue that there was no violation of the general warranty deed. However, in the circuit court's August 29, 2014, order, it stated that because it rescinded the deed, it no longer needed to reach the issue of whether the covenant of warranty was breached. Therefore, petitioners' appeal hinges on their second assignment of error – whether the circuit court erred in failing to reform the deed where undisputed evidence showed

3

that neither party relied upon the incorrect formal description in the deed and where the correct description was available, supported by expert testimony, easily discovered in the chain of title, and unclaimed by any third party. Petitioners argue that the only relief at equity is reformation of the deed because respondent sued petitioner for the breach of the covenant of general warranty deed. They assert that the parties relied on verbal representations of the sellers and a topographical map provided by the sellers rather than the formal description of the property contained in the deed. Petitioners contend that, if anything, equity requires correcting the formal description of the deed.

Petitioners further argue that they will be unfairly prejudiced by rescission of the deed, as they are also innocent purchasers. They argue that respondent failed to request equitable relief in his complaint, so he pursued only monetary damages but was awarded equitable relief. Petitioners also assert that respondent failed to prove his claim at law, as the evidence did not support his claim of constructive ouster from his property in violation of the general warranty contained in the deed. Therefore, they claim they were entitled to a verdict in their favor.

"Since rescission or cancellation of a deed is an equitable remedy, failure of consideration need not be the only basis on which relief may be granted. Other grounds, such as hardship, undue influence or fraud, may be available." Syl. Pt. 1, *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982). In addition to the monetary damages requested by respondent in his complaint filed before the circuit court, respondent requested "any further general relief [the circuit court] deems just and proper." Petitioners do not cite any law that requires respondent to specifically request rescission of the deed in order for the circuit court to order the same.

Petitioners argue that reformation of the deed would have been more proper than rescission of the deed. We previously found as follows:

> A court of equity has power and jurisdiction to decree the reformation of a deed executed through a mutual mistake of the parties as to what is intended therein, or through a mistake of a scrivener in failing to make the agreement express the mutual intention of the parties, where such reformation is sought as between the parties, or the successor of either, who, at the date he acquired an interest in the property affected by such deed, had notice of the grounds on which reformation is sought.

Syl. Pt. 1, *Johnston v. Terry*, 128 W.Va. 94, 36 S.E.2d 489 (1945). Based on the evidence before it, the circuit court concluded that the parties intended to convey a much larger tract than the 8.38 acres mapped by petitioners' surveyors. We have found that "[i]t has long been established in this jurisdiction that equity has jurisdiction to grant rescission of agreements affecting interests in land on the ground of mutual mistake as to a material existing fact." *Boyd v. Pancake Realty Co.*, 131 W.Va. 150, 157, 46 S.E.2d 633, 637 (1948).

In its order, the circuit court detailed the reasons it could not reform the deed to the true intent of the parties, including that it was not completely satisfied that superior title to the limestone cliff description could be conveyed to respondent. Based upon our review of the circuit court's order, we cannot find that the factual findings set forth therein are clearly

4

erroneous. Further, we find that the circuit court did not abuse its discretion in reaching its ultimate conclusions as to rescission of the deed.

Respondent asserts a cross-assignment of error, pursuant to Rule 10(f) of the West Virginia Rules of Appellate Procedure, arguing that the circuit court erred in failing to award the stipulated damages for closing expenses, interest, and real estate taxes, in addition to the $27,600 awarded in its August 29, 2014. In his complaint filed before the circuit court, respondent stated that he borrowed $15,500 from First Century Bank, N.A., for which he was required to pay interest and expenses. He also stated that he incurred closing costs in the amount of $621 with regard to the purchase of the subject property. Therefore, he requested an award of closing fees, costs, and expenses incurred, in addition to interest and expenses he incurred in the finance of the purchase price. Further, he requested the recovery of costs and expenses incurred for paying the real estate taxes on the subject property.

This Court has held that "[w]here an agreement is rescinded, the general rule is, that it must be rescinded entirely, and the parties be placed as near as may be *in statu quo*." Syl. Pt. 1, *Worthington v. Collins's Adm'r*, 39 W.Va. 406, 19 S.E. 527 (1894). Further, "[w]here the rescission is made on account of the vendor's fault, the general rule is, that the vendee is entitled to have the purchase-money paid by him, with its interest returned; . . ." Syl. Pt. 2, in part, *id.* Rule 10(d) of the West Virginia Rules of Appellate Procedure states that if a respondent's brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue. In this instance, because the issue is a cross-assignment of error, petitioners are in the role of the respondents as to this issue. However, petitioners failed to submit a reply or otherwise respond to this cross-assignment of error.

The circuit court's order is silent as to respondent's claim for these additional damages. Therefore, we remand this matter on this limited issue and direct the circuit court to consider respondent's claims set forth in the cross-assignment of error and enter an appropriate order.

For the foregoing reasons, we affirm the August 29, 2014, order of the circuit court and remand for proceedings consistent with this memorandum decision.

Affirmed, and remanded with directions.

**ISSUED:** August 28, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5